Our next case is United States v. Bush, No. 21305. I want to go back to this because I think it's really important. It's pages 2244 of Volume 2, where the court has concluded its recitation of and its analysis of facts and factors that you look at under 3D1.1. And then it says, consistent with the holding in Valdez-Ariana, the court concludes that the government is failing to determine and consistent with the holding in Valdez-Ariana, the court concludes, as did the Valdez case, that the defendant may be punished as an organizer under guideline set up in Section 3D1.C for the Valdez-Ariana language that concludes with coordinating and overseeing the implication, the implementation of conspiracy, even though he may not have had higher partner control over other participants. Later in the same hearing, the court did sort of inadvertently to say, manager supervisor, don't speak that. It then corrected that and clarified in response to the government asking if that's what it was finding, that it wasn't correcting that he was a manager supervisor. This is on page 2252. And these two remarks, I think, they're not the whole volume, but they're about eight minutes of our argument, right? That was my intent. I probably carelessly lumped the words together. I don't think there's any question in my mind about Mr. Bush playing a role in this organization, that he was an organizer, but one other than described by Subsections A and B. I think the court was very clear in December, and in April it simply did not, it didn't reconcile with that tension. It's inconsistent and indeed irreconcilable, and that's where the error arises here. And again, as this court said in Henry, it's better to know in remand than to guess on appeal. Well, counsel, what do you do, though, with the evidence that he instructed one of his co-conspirators on how to cook heroin, reprimanded one of his co-conspirators regarding sale of inferior heroin, and his managing the drug trafficking activity at the home? I mean, it's one thing to say you've got to manage people, but it is a fair inference that if you're managing drug trafficking activity at home, you're managing people. What do you do with that? Yeah, so two responses to that. One is, I think we want to, A, the district court considered all of that at the December hearing and nonetheless found it to be lacking, right? It found it necessary to invoke Valdez-Arigata and to apply the enhancement based on the absence of control. So I think we actually have findings that are contrary to that that we should credit and that not be engaged in appellate trafficking. So I don't think we're going to be looking at that is the first answer. The second answer is that I think, yes, on our demand, we'll be fighting on that, on appeal. But I think that all of that evidence, while indicative of extensive evidence of drug dealing here, is not necessarily indicative of control. Unsurprisingly, that's why the court went to Valdez-Arigata. It's sort of summary remarks at the April hearing that there's lots of evidence here. That's been rejected by this court and markets as being sufficient to leave the courts back finding obligations. And with respect to this, so we don't actually have a district court making those specific articulations about the facts that Geronimo has sort of identified. And those facts, I think, can cut both ways, right? Just because you're cooking doesn't mean that you're controlling. That's his role in the joint endeavor of this sort of family conspiracy. That is supervised. It's not the cooking, even this idea that he was up under, that other people were up under him, the district court rejected that, the idea that he controlled something on the premises. Again, it's not a control over people. And as the court recognized, this is also in 2244, the court recognized that he had this feeling, very vividly acknowledged, that after looking at all the evidence, he had this feeling of he's central, he's indispensable. But there's surprisingly little there. And so I think that most of those factual things we even shouldn't be looking at, and that I think Garonimo tells us we don't look at, when there is affirmative indications in the record that the district court has made findings that would support the opposite outcome. So what did the district court need to do? Say, here is participant one, and that person's name is such and such. And the defendant here controlled that person in this regard, and so X loves. That's certainly enough. Is there something less? There's probably a space between that and the sort of summary conclusory statements that Mark has rejected. I think there's a space between that, but I think that's what you just articulated is the best practices under this court's cases for applying Chapter 3. I think at minimum here, the court needed to address and reconcile the tension between the findings that it previously made, and then explain why it was rejecting them. Why, after finding that there wasn't control, it was now finding that there was, can identify under the Chapter 3 cases what that was. You say a family business, and I was confused going through the various records, whose brother, and whether that's a term of affection or blood relation. I think there's a number of you folks who are cousins here. And Mr. Bush's dad. It was Mr. Bush's father's house. It was Mr. Bush's 90-year-old father's house. Yeah. And the person who is in control of that house is Bush Jr., the defendant here. Why isn't that enough for control? If you don't do what I say, you can't come in my house anymore. Yeah. And I think to no two answers that, that control over premises is the same as people. I preserved my last two seconds if I could. You've got two seconds. Good morning, Your Honors. May it please the Court, I'm yours and on behalf of the United States. I'll just begin with the facts in this case. We disagree that there's no fact showing that he had control or supervision over others. The district court made clear that finding that Bush, as Judge Madison pointed out, recommended one person for selling inferior heroin, directed another on how to cook heroin. There's evidence that Bush controlled the activity within the Bush house. There's evidence that Bush was involved in every aspect of the organization, like collecting and dispensing drug proceeds. All very general, though. Does the district court ever say, you, Mr. Bush, exercise control over fill in the blank by fill in the blank? The court never said that. But two quick points on that. This court's case law, especially in absences, the court doesn't need to do that. The court can just say, there was control here. We're even going to anticipate findings of control, and that's enough to support the enhancements. The second thing is, we know the court knew the correct standard, because we've given that finger multiple times by both parties. Both parties, in the sentencing memoranda, explained the correct standard, that was control over another. And on the fourth day, the government said multiple times, about four or five times, the correct standard is control over another. It went so far as to cite the guideline section that includes that standard. And the government actually said, the court did indeed apply that standard here. Well, let me ask you the question, then. Can you answer that, Mr. Bush, exercise control over, and then give me a name, by doing something? And how that would be controlled, instead of just two drug co-conspirators working for each other's benefit? Sure. I can answer that. I want to make a quick point. First, is that this court has said to look at the totality of the circumstances, so we don't need to parse each fact separately. So we look at the facts in total. You need a participant. True. The court found that in at least five years. And a participant has to be a person. Correct. And that person has to be controlled by the defendant. And so that's what I'm asking you, is fill in those blanks for me, so that I know it's, I hear the under you, and I hear the health of heroin, and so forth. And I can find a name for those. But that sounds like drug conspirators helping each other out. That doesn't sound like control. Control to me is, take this down to the coroner, and bring me back $500, and be quick about it. Or go get the drugs, or take this money, or something like that. We don't have anything like that, that I'm ordering. So I think the question for this court on appeal is not whether or not we agree this is a fact that shows whether the district court truly ordered making that finding. So this court here found that, for example, Bush instructed Albert Brown on how to cook heroin. That's a finding of control. The question for us is, was that clearly irrelevant? Why is that control? What is being controlled? I think the instructing on how to cook heroin isn't an aspect of control. It's just telling someone how to do something, and this person follows their direction. I think there's reprimand of Matthew Bush as well. Any law on that, that if you show someone how to make heroin better, or the way that you like it, and you're all relatively equals in the operation, that that's control? I don't have any case on point for that, Your Honor. But the case file simply says, on clear error review, we look at what the district court found and say, was that a clearly permissible finding? And I don't think it's very permissible to say that the court, having seen the evidence and presided over a trial, determined that that was controlling them to support a three-point enhancement here. Especially when you have it, as I've said so many times, the court has pulled the correct standard. It was in the memorandum. It was mentioned multiple times on the fourth day of the hearing. And of course, as Your Honor's pointed out, Mr. Bush never objected on the fourth day of the hearing when the government said multiple times that this is the correct standard of exercising control here. Counsel, could you respond to Mr. Artigi's argument about findings? It seems like the argument this morning is turning into maybe an argument about what the findings the court made and whether they're in conflict with some of the comments about the evidence. And I'm just interested in hearing your response to that argument. So the court on the third day made the findings we just discussed. And then it seemed to suggest that Bush was maybe an organizer, giving two points. Then later suggested, again, that Bush was a manager or supervisor. And so the court immediately got confused on the third day. But the district court here did exactly what we want district courts to do. We objected and said, the district court actually, in this fashion, you're applying a three-point enhancement. The court went back, looked at the law, and said, that's correct. If there's five participants and Bush is a manager or supervisor, it's a three-point enhancement. And so we don't think that third day is a finding that the court made that Bush exercised no control. The court just got confused and corrected itself, which is what we want courts to do when there's an objection. And then go back and look at the law and fix it. And so on the fourth day, if Mr. Bush had a problem with that, he could have objected, which he did not. The government mentioned the standard multiple times. And the court, again, was too spontaneous, because Bush, of course, didn't object, said that, just to be clear about the factual basis in this case, there's abundant evidence that Mr. Bush managed to provide a drug trafficking operation. And, of course, that operation was operated at Mr. Bush's house. And so Mr. Bush was in charge of activity in the house and the people there. I want to quickly contest the idea that Mr. Bush's request for clarification on the court theory of the objection. Mr. Bush asked for clarification on the fact that there's two conspiracies charged here. And he wanted to know which conspiracy the court found Mr. Bush managed to control. The court rejected that as based on a false premise, because the guideline says he controlled criminal activity, not controlled a specific conspiracy. And so Mr. Bush's objection in no way related to the district court to the idea that he thought the court was applying the incorrect legal standard, or that the court didn't adequately explain its backgrounds. This court has said that an objection has to be definite enough to allow the district court to know the specific basis for an objection. And while Bush did object to the fact that, in the past year, he said he did not support the enhancement, that's very different from saying the court is applying the incorrect legal standard, that the court did not find that Bush had control over another. I'll quickly point out, as this court has mentioned in an act, to be specific, that if this is a 10-year review, which we believe it is, Bush also can't satisfy the third and fourth prongs, because, again, he could have simply asked the court to name a person, which the district court could have easily done on this record. Fairness, I'm happy to answer any more questions about this point. If there are any questions, we're happy to address them in our briefs. Well, I've got a question about the issue we haven't talked about yet this morning, which is the determination of the drug quantity. And there was an argument about whether the district court's reliance on statements was justified. And in particular, my question is this. We have Mr. Blewett as one of the sources that the court relied upon. And there was evidence that, at least at one point, Mr. Blewett had lied to law enforcement about his participation in the drug conspiracy, which left me wondering, what does it mean to say, as the court did, that his statement about amounts that he sold was sufficiently reliable? How do we apply that standard when we have evidence in the record that he lied to law enforcement? How could it then be sufficiently reliable? So this court's case law does explain that the standard for determining reliability is a minimum addition of reliability. And so the district courts consider that the fact that Blewett initially lied, but then when he was confronted, he came clean and decided to tell the truth. And the courts said that when he told the truth, those statements were corroborated by significant evidence in the record. So for example, here, the court found that three separate statements from confidential informants corroborated Blewett's statement that he sold them heroin. His statements were consistent with evidence in trial that Bush and his co-conspirators sold signature coins of heroin. His statements to the police indicated statements that were self-procriminating, which this court has said are indicators of reliability. And so the court looked at those factors and said, that's reliable despite the fact that he may have initially began lying, which, of course, is a natural thing for people to do when they can talk to the police. And so the question is, was that a clearly irrelevant finding? And under this court's case law, it was not clearly erroneous. So we review that for clear error. That's correct, Your Honor. And so the question is, was that a clearly permissible finding? And because it was corroborated and consistent with so much other evidence, the district court was well within its discretion to make that, or excuse me, well within its ability to make that finding that wasn't clearly erroneous. Your Honor, if there are no more questions, I have the rest of our briefs. Thank you very much. Mr. Artucci, do you want one sentence? I'll give you one sentence. Your Honor, unless the court has questions, I yield my two seconds. All right. We'll remember that for next time. Well, that completes the arguments. The case will be submitted, and counsel are excused. And the court will take its break at this point.